IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAY LLOYD HARRIS                                                                                          PLAINTIFF

v.                                           Civil No. 6:21-cv-06143

DIRECTOR DEXTER PAYNE,
Arkansas Division of Correction (ADC);
CHIEF DEPUTY DIRECTOR MARSHALL D. REED, ADC;
JOHN DOE MEDICAL DIRECTOR, ADC; and
JOHN DOE MENTAL HEALTH DIRECTOR, ADC                              DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Jay L. Harris ("Harris"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court on the Motion to Dismiss (ECF No. 9) filed by ADC Director Dexter Payne and ADC Deputy Director Marshall D. Reed.[1] Harris has responded (ECF No. 13) to the Motion.

I.  BACKGROUND

Harris is currently incarcerated in the Ouachita River Unit ("ORU") of the Arkansas Division of Correction ("ADC"). (ECF No. 1 at 2). He is serving a 40-year sentence. *Id.* at 3.

According to the allegations of the Complaint, the ADC has a "lights out" policy which on

---

[1] The remaining two Defendants, the ADC medical director and the ADC mental health director, have not yet been identified. Director Payne and Deputy Director Reed were directed (ECF No. 6) to identify these individuals when they responded to the Complaint but have not yet done so.

1

weekdays is from 10:30 p.m. to 4:30 a.m., a mere six hours. (ECF No. 1 at 4). During this time, Harris says his sleep is interrupted for disciplinary court, legal mail delivery, morning pill call, and breakfast. *Id.* With respect to the morning pill call, Harris asserts that inmates are faced with a choice between medication and sleep. *Id.* at 8. Similarly, at breakfast call, he indicates he is faced with a choice between nutrition and sleep. *Id.* at 10.

Harris alleges that uninterrupted sleep is required to maintain proper physical and mental health and recovery. (ECF No. 1 at 5). Harris maintains that limiting the amount of uninterrupted sleep inmates get constitutes physical and mental torture via sleep deprivation and violates the Eighth Amendment. *Id.* at 4-5. He notes that the night shift staff works from 6:30 p.m. until 6:30 a.m. which gives them four hours before lights out and two hours after lights out to accomplish the tasks at issue. *Id.* at 5.

Harris has sued the Defendants in both their individual and official capacities. (ECF No. 1 at 4). As relief, Harris requests compensatory and punitive damages. *Id.* at 7. He also asks that the policy or its manner of implementation be adjusted to allow for a "Proper Nights Rest of Uninterrupted Sleep." *Id.*

## II.   APPLICABLE STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.* at 544.

### III. DISCUSSION

Defendants Payne and Reed argue that they are entitled to the dismissal of this case on three separate grounds. First, they argue sovereign immunity bars the claims against them in their official capacities. Second, they argue the claims against them are, at best, based on their supervisory positions within the ADC which is an insufficient basis for liability. Third, they argue they are entitled to qualified immunity. Defendants Payne and Reed maintain they are entitled to dismissal of this case and ask that the dismissal be counted as a strike for purposes of 28 U.S.C. § 1915(g).

#### A. Sovereign Immunity

Defendants' first argument is that Harris' claims are barred by the Eleventh Amendment and principles of sovereign immunity. The Eleventh Amendment provides that "[t]he Judicial

power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States." U.S. Const. amend XI. "The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." *Frew ex re. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). The ADC is an agency of the State of Arkansas. *Campbell v. Arkansas Dep't. of Corr.*, 155 F.3d 950, 962 (8th Cir. 1998). Further, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71.

"Eleventh Amendment jurisprudence is well-settled: 'a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.'" *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir. 1991) (quoting *Edelman v. Jordan,* 415 U.S. 651, 663 (1974)). "Federal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity." *Frew*, 540 U.S. at 437.

It is clear Harris may not seek relief in the form of monetary damages from the Defendants in their official capacities, however, Defendants Payne and Reed overstate their position by arguing that Harris is not entitled to any form of relief against them. The ADC officials appear to disregard the fact that Harris has asked for relief in the form of a prospective modification of the existing policy or in its manner of implementation. Under the exception set forth in *Ex Parte Young*, 209 U.S. 123 (1908), "a private party can sue a state officer in his official capacity to enjoin

4

a prospective action that would violate federal law." *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). The exception is necessary to "permit the federal courts to vindicate federal rights." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984).

"In determining whether this exception applies, a court conducts a straightforward inquiry into whether [the] complaint alleges [1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." *Church v. Missouri*, 913 F.3d 736, 747-48 (8th Cir. 2019) (cleaned up). Here, Harris has named the Director and Deputy Director in charge of the ADC in whose custody he is being held. The issue concerns the ADC's own internal policy and the implementation of the same. Harris alleges an ongoing violation of federal law. The relief requested encompasses a claim for prospective injunctive relief.

Therefore, although Defendants Payne and Reed in their official capacities may not be held liable for monetary damages, Harris' claim for prospective injunctive relief against an ongoing violation of federal law may proceed. Defendants Payne and Reed are not entitled to dismissal of the entire Complaint based on sovereign immunity.

### B. Supervisory Liability Claims

The Court next considers Defendants' argument that there is no basis on which they be held individually liable for the alleged constitutional violations. "To establish personal liability of the supervisory defendant, [Harris] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for

5

supervising the operations of a prison is insufficient to establish personal involvement required to support [§ 1983] liability").

A defendant in a § 1983 suit cannot be held vicariously liable for the acts of another. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). In other words, Defendants Payne and Reed may not be held liable for the constitutional violations of a subordinate based solely on the employment relationship. *Id.* Clearly, neither of the Defendants participated directly in the alleged constitutional violations; nor were directly involved in the implementation of the policy. However, the lights out policy is an ADC-wide policy. Defendants Payne and Reed occupy positions where they would serve as final policy makers for the ADC.

Additionally, as to the implementation of the policy, and as Harris correctly points out, he filed several grievances about the policy and the way it is implemented. These grievances were reviewed by the Defendants, and they did nothing to stop the alleged ongoing violations of Harris' constitutional rights. While generally supervisors' after-the-fact participation in reviewing grievances is "an insufficient basis to establish 'personal knowledge' for purposes of § 1983," *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988), there are instances where supervisors may be held liable "when their corrective inaction amounts to deliberate indifference or tacit authorization of the violative practices," *Landford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). *See also Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (supervisors can be held liable if they "[r]eceive notice of a pattern of unconstitutional acts committed by subordinates" but "[f]ailed to take sufficient remedial action").

6

The allegations in this case are sufficient to assert plausible supervisory liability claims against Defendants Payne and Reed. They are not, therefore, entitled to dismissal of the individual capacity claims.

### C. Qualified Immunity

Defendants' final argument is that they are entitled to qualified immunity. Defendants correctly set forth the broad outlines of the doctrine of qualified immunity in their brief, however, their sole argument in support of their entitlement to qualified immunity is that the "Complaint contains no allegations of wrongdoing on behalf of the ADC Defendants." (ECF No. 10 at 8). The Court has already rejected this argument and determined that Harris has stated a plausible supervisory liability claim against Defendants Payne and Reed. Nevertheless, having asserted a right to qualified immunity, the Court must consider whether Defendants Payne and Reed are entitled to assert this defense.

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)).

Defendants are entitled to dismissal of individual capacity claims under Rule 12(b)(6) if they show that they are "entitled to qualified immunity on the face of the complaint." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017). Thus, they are "entitled to qualified immunity unless

[Harris] has plausibly stated both (i) a claim for violation of his [Eighth Amendment right not to be subjected to unconstitutional conditions of confinement]; and (ii) that the right was clearly established at the time of the alleged violation." *Vandevender v. Sass*, 970 F.3d 972, 974-75 (8th Cir. 2020). "District courts may consider these two questions in any order, but may not deny qualified immunity without answering both questions in the plaintiff's favor." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014) (cleaned up).

To establish that conditions of confinement violate the Eighth Amendment, a prisoner must show the alleged deprivation is "objectively, sufficiently serious," resulting in "the denial of the minimal civilized measure of life's necessities," and that prison officials were deliberately indifferent to "an excessive risk [to the inmate's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Negligence or even gross negligence is insufficient to establish deliberate indifference; rather, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993).

"'[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment.'" *Walton*, 752 F.3d at 1120 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). Not all allegations of difficulty sleeping are sufficient to state a claim under the Eighth Amendment. *See e.g., Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir. 1999) (allegations that being in restraints which made it "more difficult to sleep and relieve himself," when lasting only for 24 hours did not show a "serious deprivation of 'the minimal civilized measure of life's necessities"). Here, however, Harris has alleged that during the daily six-hour period when lights are out his sleep is interrupted for disciplinary court, legal mail delivery, morning pill call, and breakfast. His allegations of sleep deprivation are sufficient to

8

state a plausible Eighth Amendment claim.[2] Thus, the Court answers the first question in the qualified immunity analysis "yes."

The Court must now determine whether it is clearly established that sleep deprivation via multiple interruptions constitutes a violation of the Eighth Amendment. "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589-90 (2018) (cleaned up). A "high degree of specificity" is required." *Id.* at 590.

As stated by the Eighth Circuit:

> for a right to have been clearly established at the time of the alleged violation, there must have existed circuit precedent that involves sufficiently similar facts to squarely govern [Defendants'] conduct in the specific circumstances at issue, or, in the absence of binding precedent, . . . a robust consensus of cases of persuasive authority constituting settled law. At the end of day, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, permitting liability only for the transgression of bright lines, not for violations that fall into gray areas.

*Perry v. Adams*, 993 F.3d 584 (8th Cir. 2021) (cleaned up).

As noted above, the Eighth Circuit has recognized a general right against sleep deprivation. *See also Walker*, 717 F.3d at 126 (2d Cir. 2013) ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment"); *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) ("[S]leep undoubtedly counts as one of life's basic needs. Conditions designed to prevent sleep, then, might violate the Eighth Amendment"); *Mammana v. Federal Bureau of Prisons*, 934 F.3d 368, 374 (3d Cir. 2019) (Eighth Amendment

---

[2] Whether Harris' claim could survive a summary judgment motion is an entirely different matter. *See e.g., Bargo v. Hobbs,* No. 5:13-cv-00191, 2014 WL 2740297 (E.D. Ark. June 17, 2014)("There is no indication that the lighting schedule or the various 'calls' at the Varner Unit are designed to interrupt inmate sleep").

claim adequately stated where plaintiff alleged as a result of conditions of confinement "he could 'hardly sleep,' and when he did fall asleep he would 'wake up frequently shivering,' all of which caused him 'to suffer physical and psychological harm'"). This broadly stated right is not, however, framed to the level of specificity required by the Supreme Court. Instead, the question is whether an inmate is entitled to a period of sleep uninterrupted by activities at the prison. Framed this way, there is no clearly established right. *See e.g., Bargo v. Hobbs*, No. 5:13-cv-00191, 2014 WL 2740297 (E.D. Ark. June 17, 2014) ("[E]ven if this Court were to determine that Plaintiff has a right to additional lights out time, or that he has a right to dictate a prison schedule that essentially mandates a period of time that inmates cannot be moved or attended to, that right is not clearly established"). Defendants are, therefore, entitled to qualified immunity on the individual capacity claims against them.

### IV.   CONCLUSION

For these reasons, it is recommended that the Motion to Dismiss (ECF No. 9) be **GRANTED IN PART AND DENIED IN PART**.

Specifically, it is recommended that the Motion be:

(1) **GRANTED** with respect to all claims for monetary damages;

(2) **DENIED** with respect to the claims for prospective injunctive relief against ongoing violations of federal law; and,

(3) **GRANTED** with respect all individual capacity claims asserted against Director Payne and Deputy Director Reed.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file**

**timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of January 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE