IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAY LLOYD HARRIS                                                                                                    PLAINTIFF

v.                                              Civil No. 6:21-cv-06143

DIRECTOR DEXTER PAYNE,
Arkansas Division of Correction (ADC);
CHIEF DEPUTY DIRECTOR MARSHALL D. REED, ADC                                  DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Jay L. Harris ("Harris"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court on the Motion for Summary Judgment (ECF No. 36) on the issue of exhaustion filed by Arkansas Division of Correction ("ADC") Director Dexter Payne and ADC Deputy Director Marshall D. Reed. Harris has responded (ECF No. 42) to the Motion. The Motion is ready for decision.

**I.      FACTUAL BACKGROUND**

Harris is currently incarcerated in the Pine Bluff Unit of the ADC. When he filed his complaint, he was incarcerated in the Ouachita River Correctional Unit of the ADC. (ECF No. 1 at 2). He is serving a 40-year sentence. *Id.* at 3.

1

This lawsuit concerns the "lights out" policy of the ADC. Specifically, the ADC has a "lights out" policy which on weekdays is from 10:30 p.m. to 4:30 a.m., a mere six hours. (ECF No. 1 at 4). During this time, Harris says his sleep is interrupted for disciplinary court, legal mail delivery, morning pill call, and breakfast. *Id.* With respect to the morning pill call, Harris asserts that inmates are faced with a choice between medication and sleep. *Id.* at 8. Similarly, at breakfast call, he indicates he is faced with a choice between nutrition and sleep. *Id.* at 10.

Harris alleges that uninterrupted sleep is required to maintain proper physical and mental health and recovery. (ECF No. 1 at 5). Harris maintains that limiting the amount of uninterrupted sleep inmates get constitutes physical and mental torture via sleep deprivation and violates the Eighth Amendment. *Id.* at 4-5. He notes that the night shift staff works from 6:30 p.m. until 6:30 a.m. which gives them four hours before lights out and two hours after lights out to accomplish the tasks at issue. *Id.* at 5.

Defendants previously filed a Motion to Dismiss. (ECF No. 9). The Motion was granted in part and denied in part. (ECF No. 34). Specifically, all claims for monetary damages were dismissed as were the individual capacity claims against Defendants. *Id.* The Motion was denied with respect to Harris' claims for prospective injunctive relief. *Id.* Defendants have now moved for summary judgment arguing Harris failed to properly exhaust his administrative remedies before filing this lawsuit.

## II.   APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine

2

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   DISCUSSION

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Specifically, Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this

3

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not per se inadequate simply because an individual later sued was not named in the grievances." *Id*. at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

### A.  ADC Grievance Policy

Administrative Directive 19-34 ("AD 19-34") provides inmates in ADC custody an administrative process for the resolution of complaints, problems, and other issues. (ECF No. 36-1 at 1). The policy is designed "to solve problem[s] at the lowest level, as promptly as feasible, and in a manner that is fair, reasonable, and consistent with" the ADC's mission. *Id.* The policy requires inmates to "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id.* at p. 6. Inmates may only write in the space provided on the form. *Id.* No additional pages are permitted. *Id.* The policy stresses that an inmate must "specifically name each individual involved in order that a proper investigation

4

and response may be completed." *Id.* at 5.   Only one issue may be raised in a grievance.  *Id.*   If other issues are raised, they "will not be addressed and will not be considered as exhausted."  *Id.*

The ADC's inmate grievance procedure consists of three steps.  Step-One is known as the Informal Resolution Procedure, which requires an inmate to first seek an informal resolution by submitting a Unit Level Grievance Form within 15 days of the alleged incident to the designated problem solver.  (ECF No. 36-1 at 6).  If the inmate is dissatisfied with the Problem Solver's resolution, he may proceed to Step-Two.  *Id.* at 8.  And if the designated Problem Solver has not contacted the inmate within three working days, the inmate may also proceed to Step-Two.  *Id.*

Step-Two is known as the Formal Grievance Procedure, and the inmate files a formal grievance on the same Unit Level Grievance Form used during Step-One. (ECF No. 36-1 at 9).  Upon receipt, the Grievance Officer will complete the form by assigning a number to the grievance and logging the date the grievance was received, the inmate's name, ADC number, type of grievance, and the text of the inmate's complaint into the Electronic Offender Management Systems ("eOMIS").  *Id.* at 9.   An inmate will receive a response to his formal grievance from the warden or the warden's designee within 20 working days.  *Id.* at 11.   The response shall state "the reason for the decision, in clear, well reasoned terms."  *Id.*

If the inmate is not satisfied with the warden's response, or the inmate has not received a response "within the allotted time frame as stated on the Acknowledgment Form or the Extension Form," the inmate may proceed to Step-Three and file an appeal.  (ECF No. 36-1 at 11).  An appeal is to be submitted within five working days to the Chief Deputy/Deputy/Assistant Director. *Id.* at 11-12.   An inmate's appeal must be written in the space provided on the original

Warden/Center Supervisor's form, the Health Services Response to the Unit Level Grievance Form, or the Acknowledgement or Rejection of the Unit Level Grievance Form. *Id.* at 12. To complete the appeal, the inmate must state a reason for disagreeing with the warden, Health Services Administrator, or Mental Health Supervisor's decision and date, sign, and write his ADC number on the attachment being appealed. *Id.* The inmate may not "list additional issues, requests, or names which were not a part of the original grievance." *Id.*

The ADC's entire grievance process is to be completed within 76 working days "unless a valid extension has been executed, or it can be documented that unforeseen circumstances have occurred." (ECF No. 36-1 at 14). The policy explicitly states that inmates are required to exhaust their administrative remedies as to all defendants at all levels of the grievance process before filing a lawsuit or their lawsuit may be dismissed summarily pursuant to the exhaustion requirement of the Prison Litigation Reform Act. *Id.* at p. 19.[1] To fully exhaust administrative remedies under AD 19-34, an inmate is required to timely file an informal resolution, a formal grievance, and a grievance appeal and receive a decision addressing the allegations contained in the grievance at each level.

### B. Exhaustion

Defendants maintain that the undisputed facts demonstrate Harris did not exhaust his administrative remedies as to his claims against them and that they are entitled to summary judgment in their favor. (ECF No. 36 at 1).

---

[1] The Court notes that exhaustion is an affirmative defense that can be waived. *Charron v. Allen*, 37 F.4th 483,489 (8th Cir. 2022).

According to the affidavit of Terri Brown ("Brown"), the inmate grievance supervisor for the ADC, Harris filed a single grievance relating to the claim in this lawsuit: Grievance Number OR-21-00532. (ECF No. 36-2 at 6). Harris filed the unit level grievance on July 6, 2021. *Id.* His grievance stated as follows: "Breakfast meal is served during our limited lights out period. This leads to a choice of nutrition & calories vs. needed rest. Thus putting our physical or mental health at risk." (ECF No. 1 at 10-12). Harris did not name the Defendants in the grievance. (ECF No. 36-2 at 6).

Harris proceeded to Step-Two and received a response from the warden on August 26, 2021. (ECF No. 36-2 at 7). The response found the grievance without merit because Harris failed to state a specific date, time, or staff to be investigated. *Id.* Harris proceeded to Step-Three by appealing the warden's decision. *Id.* Harris wrote: "Every day, every shift (AM). Torture, no matter your policy is illegal. Sleep deprivation is recognized as torture." (ECF No. 1 at 11). Defendant Reed responded to the appeal on October 11, 2021, and informed Harris that he agreed with the warden's decision that Harris had failed to state a specific time, date, and staff to be investigated. (ECF No. 36-2 at 7). The appeal was denied. *Id.* Brown opines that "[a]lthough Harris completed all three steps of AD 19-34, he did not properly exhaust any claim against Defendants Payne and Reed, as he did not name them in the sole grievance related to his claims." *Id.* Brown asserts that Harris "is precluded from pursuing legal action against them under the PLRA." *Id.* at 8.

Defendants argue the unit level grievance was facially deficient under the terms of AD 19-34. (ECF No. 37 at 8). Defendants argue the "vague complaints" in the grievance did not include

7

any information that would put the ADC on notice to investigate either of the Defendants. *Id.* at 8-9. Further, they argue Harris failed to specify what policy he claims is illegal. *Id.* at 9. Finally, they argue that the claims on appeal differed from those presented in the original grievance which is not allowed under AD 19-34. *Id.*

In response, Harris argues he was challenging the policy that was applied day in and day out at ADC facilities.[2] (ECF No. 42 at 1). He asserts that the technical requirements of AD 19-34 should not apply when an inmate is challenging an ADC policy. *Id.* Harris points out he would have to name all personnel involved in applying the policy seven days a week, month after month. *Id.* He notes that inmates are only allowed three grievances a week which go beyond Step-One.[3] Further, Harris asserts that Director Payne signed the administrative directives and regulations in effect at ADC facilities and his appeal was decided by Deputy Director Reed. *Id.*

The PLRA, Section 1997e(a), contains no exceptions to the exhaustion of administrative remedies requirement and forecloses judicial discretion. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016). It does, however, contain "one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Id.* at 639. "But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.*

---

[2] Harris alleges Brown's affidavit does not address other unit level grievances he filed that are attached to his Complaint (ECF No. 1 at 8-9). However, Brown's affidavit only indicates there was a single grievance that went through all three steps of AD 19-34. Harris has offered no support for the fact that he proceeded through all three levels with respect to these other grievances. There is no suggestion that Brown's affidavit is in error.
[3] Inmates are limited to five step-one informal grievances per each seven-day period. (ECF No. ECF No. 36-1 at 15). Further, inmates are limited to three Step-Two formal grievances per each seven-day period. *Id.*

8

To be "available" means capable of being made use of. "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . .. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id*. Second, when "an administrative scheme is so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation . . . such interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.* at 644. An inmate's subjective belief about the futility of the process, or his misunderstanding of the process, is irrelevant to determining whether a grievance procedure is available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

Here, Harris argues that he could not comply with the technical requirements of the grievance policy because he was challenging an ADC policy. The Court construes this as an argument that the procedure is unavailable when one is challenging an ongoing ADC policy. Specifically, Harris essentially argues that it makes no sense to "include the date, place, personnel

9

involved or witnesses" when challenging an ongoing ADC policy. Further, he notes he would have to submit a daily grievance to challenge the application on an ongoing policy which in and of itself is not possible under the grievances policy because of its limitations on the number of open grievances.

The Court is not free to invoke a judge-made exception to the exhaustion requirement. While the Court is sympathetic to Harris' arguments about AD 19-34 not providing an "exact fit" when the challenge is to an ongoing policy and not a discrete incident, the Court believes Harris could easily have made his grievance more specific by explicitly stating he was challenging the overall policy, as he did on appeal. More importantly, he could have easily named the Director and Deputy Director in the grievance. Had Harris done so and received the same or similar response, the question of whether he had an available remedy would be a different one. However, administrative exhaustion requires "using all the steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). On the record before it, the Court concludes Harris failed to exhaust his administrative remedies.

## V.     CONCLUSION

For the reasons and upon the authorities discussed above, it is recommended that the Motion for Summary Judgment (ECF No. 36) be **GRANTED**, and that this case be **DISMISSED WITHOUT PREJUDICE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file**

**timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of December 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE